**ABIRI LAW, PC**
Robert Abiri (SBN 238681)
rabiri@abirilaw.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
t. 949.459.2133
f. 949.534.4367

*Attorneys for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHELSI HENDRIX, on behalf of herself and all others similarly situated, | CASE NO.: 2:25-at-00645 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| HANDEL'S ENTERPRISES, LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Chelsi Hendrix ("Plaintiff"), on behalf of herself and all others similarly situated, brings this class action against Defendant Handel's Enterprises, LLC ("Defendant" or "Handel's") based upon personal knowledge as to herself, and upon information, investigation and belief of her counsel.

## INTRODUCTION

1.    When an ice cream shop holds itself out as making "homemade" ice cream with only "the best ingredients," using "original methods and recipes" from 1945 "to this day," claims to have "never strayed from the original recipe," with a "dedication to quality" that "has remained the same" for "over 75 years" using the "finest ingredients" (collectively, the "Quality Representations"), a consumer would not expect the ice cream it sells to contain ingredients such as propylene glycol, FD&C #40, FD&C #1, citric acid, carrageenan, BHA, disodium phosphate, and

other undesirable ingredients (collectively, the "Hidden Ingredients"). But this is exactly what Handel's does.

2.    This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of its ice cream products (the "Products"), which are marketed and advertised using the Quality Representations, while actively and intentionally hiding the use of the Hidden Ingredients from consumers.

3.    Upon walking up to, entering and interacting with a Handel's store, this is what consumers see:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






CLASS ACTION COMPLAINT





-4-

1           4.      A consumer is met with repeated images of "HOMEMADE" ice cream "SINCE

2  1945" on the storefront, inside and on napkins and other containers, claiming it is "Made Fresh

3  Daily." They are also met with a sign recounting Alice Handel's "Story" of using the "finest" and

4  "best" ingredients in a dedication to quality that Defendant states has "remained the same" for

5  "over 75 years." Additionally, should a potential consumer check social media or Handel's

6  website prior to deciding to visit the store (which many consumers now do), the same story is

7  echoed throughout, and in even more detail:



In the summer heat of 1945, Alice Handel created the sweetest of legacies in Youngstown, Ohio. Using fresh fruit from her backyard garden and her own personal recipes, Alice lovingly made ice cream that quickly became a neighborhood favorite. Handel's, and a commitment to quality, was born.

To this day, Handel's upholds the traditions Alice started all those years ago. From making each batch fresh daily to using her original methods and recipes, we're still sharing our homemade ice cream and serving the communities we love so much one scoop at a time.



## About Us

Handel's Homemade Ice Cream has been made fresh daily at each store since 1945. We use an abundance of only the best ingredients available and are proud to be recognized as the #1 ice cream on the planet!

Terms & Conditions

Privacy Policy



25           5.      At every opportunity, Handel's paints a picture of high-quality, homemade style ice

26  cream using the Quality Representations. Yet this is patently false. No reasonable consumer

considers ingredients such as propylene glycol, FD&C #40 or BHA[1] as ingredients a company promoting the Quality Representations would include. Moreover, the Products are ***not*** "Made Fresh Daily" despite being ubiquitously advertised as so in its stores and online.

6.      Indeed, and as an example, FD&C #40 was not even invented until 1971 which makes the "Since 1945" provably false.[2] Accordingly, posts such as this by Handel's on social media are untrue and directly mislead consumers:




7.      Handel's loops in several of the Quality Representations in the above social media post, including that it uses "fresh, high-quality ingredients" and that it has "never strayed from the original recipe…" Yet Handel's Strawberry Ice Cream is comprised of the following ingredients:

> **INGREDIENTS:** *Ice Cream Mix Milk, Cream, Sugar, Corn Syrup, Nonfat Dry Milk, Guar Gum, Mono and Diglycerides, Cellulose Gum, and Carrageenan., Strawberries Strawberries [sic], Sugar, Strawberry Flavor Water, Propylene Glycol, Ethyl Alcohol, Xanthan Gum, Beet Juice Extract, FD&C #40, FD&C #1, Triacetin, Citric Acid, Vanilla Flavor Water, Alcohol, Natural Flavor, Vanilla, Vanillin, and Caramel Color, Fruit Acid Water, Citric Acid.*

---

[1] BHA is banned in the EU. https://www.goodrx.com/well-being/diet-nutrition/american-foods-banned (last visited, May 20, 2025).

[2] https://en.wikipedia.org/wiki/Allura_Red_AC (last visited, May 20, 2025).

8.      These hardly qualify as "fresh, high-quality ingredients." FD&C #40 and #1, for example, are synthetic food dyes. Their invention and use also post-date the "1945" claim. Last year, California signed into law the California School Food Safety Act banning them both from being served at schools starting in 2027.[3]

9.      Even more troubling, Handel's deliberately hides the Hidden Ingredients. Handel's does **not list or disclose its ingredients anywhere**. This includes its stores and website. Thus, a consumer cannot see or read the ingredients list before purchasing ice cream. This is contrary to most ice cream chains which <u>do</u> disclose their ingredients to their customers.[4]

10.      Moreover, while no reasonable consumer believes Defendant physically makes the Products at "home" and brings it into the stores, the totality of the advertising and marketing in the Quality Representations do impart a specific message. Namely, the Products' advertising, including storefront, in-store, website and online marketing, make representations that lead reasonable consumers to believe the Products are produced in a "homemade" style with recipes dating back to 1945, use only "the best ingredients," and are made without the use of the Hidden Ingredients which includes synthetic ingredients, dyes and other preservatives as indicated above.

11.      Plaintiff and other consumers purchased the Products and paid a premium price based upon their reliance on the Quality Representations. Had Plaintiff and other consumers been aware that Defendant's Quality Representations were false, they would not have purchased the Products or would have paid significantly less for them. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.[5]

---

[3] https://www.usnews.com/news/health-news/articles/2024-10-01/california-bans-6-artificial-dyes-in-foods-served-at-public-schools (last visited, May 20, 2025).

[4] *See e.g.* https://mcconnells.com/collections/fine-ice-creams; https://www.coldstonecreamery.com/nutrition/pdf/CSC_Ingedient%20Statement-Ice%20Cream_Yogurt_Sorbet.pdf; https://www.baskinrobbinsathome.com/flavor-page-world-class-chocolate-ice-cream; https://www.icecream.com/us/en/brands/haagen-dazs/products/butter-pecan-ice-cream; https://www.benjerry.com/flavors/chocolate-covered-strawberry-ice-cream/pint (last visited, May 20, 2025).

[5] Following receipt of Plaintiff's CLRA letter (discussed *infra*, ¶ 59), Handel's modified some of the language contained in the Quality Representations.

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home state; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

13.     This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in California, and intentionally and purposefully placed the Products into the stream of commerce within California.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased Defendant's Product(s) in this District.

**PLAINTIFF**

15.     Plaintiff is a citizen of the United States and the State of California, and she currently resides in Sacramento, California. On multiple instances in 2024, Plaintiff purchased different varieties of the Products from Handel's Ice Cream locations around her home in Sacramento, California, including the Rancho Cordova store. Based on the Product's Quality Representations, Plaintiff reasonably believed that the Products were produced in a "homemade" style dating back to 1945, used only "the best ingredients available", and were made without the use of the Hidden Ingredients which includes synthetic ingredients, dyes and other preservatives as indicated above. Had she known that the Products contained such ingredients, she would not have purchased them, or would have paid significantly less for them.

16.     Despite Defendant's misrepresentations, Plaintiff would purchase the Products, as advertised, if they did not contain the Hidden Ingredients. Although Plaintiff frequently shops at Defendant's various locations, absent an injunction of Defendant's deceptive advertising, she will be unable to rely with confidence on Defendant's advertising of the Products in the future. Furthermore, while Plaintiff currently believes that the Products are not made using high quality ingredients and recipes from 1945, and contain the Hidden Ingredients, she lacks personal

-8-

knowledge as to Defendant's specific business practices, and thus, she will not be able determine whether the Products will accurately reflect their advertising. This leaves doubt in her mind as to the possibility that at some point in the future the Products could be made in accordance with Defendant's Quality Representations. This uncertainty, coupled with her desire to purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Defendant from making the alleged misleading representations. In addition, other Class members will continue to purchase the Products, reasonably but incorrectly, believing the Products are free from the Hidden Ingredients.

## DEFENDANT

17.    Handel's Enterprises, LLC, is a Delaware corporation with its principal place of business in Canfield, Ohio. Defendant operates "Handel's", a leading brand of premium ice cream that is advertised and marketed with the Quality Representations. Defendant sells the Products throughout California, including in this District, as well as 12 other states spanning approximately 150 locations.

## FACTUAL ALLEGATIONS

18.    Defendant is responsible for the formulation, manufacturing, marketing, labeling, advertising, and sale of the Products, which are sold at multiple locations throughout California and across the United States.

19.    Handel's was founded by Alice Handel in Youngstown, Ohio in the summer of 1945. While no longer a small business owned by Alice Handel, Defendant claims that it "upholds the traditions that Alice started all those years ago. From making each batch fresh daily to using her *original methods and recipes*[.]" Inside the stores, Handel's recounts Alice's "Story" explicitly claiming that "Today, over 75 years later, Alice's dedication to quality and service has remained the same" while citing the use of "the finest" and "the best" "ingredients."

20.    Defendant further claims to have "never strayed from the original recipe, because sometimes, the classics are simply unbeatable."

CLASS ACTION COMPLAINT

21.     Capitalizing on its perhaps once clean ingredient ice cream, Defendant prominently portrays itself as making "homemade" and high-quality ice cream, claiming the ice cream is "Homemade Ice Cream Since 1945."

22.     The Quality Representations directly represent to consumers that the Products are made with high-quality ingredients. "Homemade" is traditionally associated with fresher, higher-quality ingredients.[6] Promoting the use of high-quality ingredients often creates the expectation that the food or snack has greater nutritional benefits and is free from synthetic and undesired ingredients.[7]

23.     Despite these representations, and unbeknownst to consumers, the Products are made with the Hidden Ingredients, which consist of multiple synthetic and undesirable ingredients.

24.     Consumers prefer no-additive foods and as a result, many believe their use is not necessary and not warranted.[8]

25.     Research indicates that consumers are generally view artificial additives as a negative.[9] "A study examining risk perception revealed that individuals are more likely to reject food containing additives when they encounter unfavorable data…Consumers express concerns about the potential health implications of additives and desire clearer information on this

---

[6] "And the word Homemade definitely carries some expectations with it. When we hear that word our mind quickly decides that something more happened than a bit of stirring or heating.  We immediately have visions of ingredients being lovingly gathered together and made into something a bit more unique and special." *What does "Homemade" mean to you?*, https://www.themakeyourownzone.com/what-does-homemade-mean-to-you/ (last visited, May 20, 2025).

[7] "Fresh ingredients contain fewer preservatives and artificial flavors than many pre-packaged foods, giving you meals that are closer to their natural state." Karen Elsher, *What Are the Advantages and Disadvantages of Homemade Food? Here's Everything You Need to Know,* https://karenrecipes.com/blog/advantages-disadvantages-homemade-food/ (last visited, May 20, 2025).

[8] Zhong Y, Wu L, Chen X, Huang Z, Hu W. Effects of Food-Additive-Information on Consumers' Willingness to Accept Food with Additives. Int J Environ Res Public Health, https://pmc.ncbi.nlm.nih.gov/articles/PMC6266858/ (last visited, May 20, 2025).

[9] *The Evolution of Food Additives: From Ancient Times to Today,* https://www.eatoravoid.com/evolution-of-food-additives/ (last visited, May 20, 2025).

-10-

1  subject."[10]

2      26.     "In an age of mechanized mass production, people have increasingly yearned for

3  products made in more traditional ways. Handmade goods and artisanal foods are not just fads;

4  they continue to have a significant impact in the marketplace."[11] Consumers value these products

5  because they think they are higher in quality.[12]

6      27.     To capture this market share, Defendant specifically marketed its Products with the

7  Quality Representations, explicitly representing to consumers that its Products are in fact made

8  with high quality ingredients.

9      28.     Despite these representations, and unbeknownst to consumers, the Products are

10  made with multiple synthetic and undesirable ingredients such as the Hidden Ingredients.

11      29.     The Products are not only purchased by consumers, but not surprisingly, oftentimes

12  for their children as well. Parents are hyperconscious about what they allow their children to eat,

13  and are thus drawn to foods and stores that promise high quality ingredients, such as Defendant

14  does with the Quality Representations.

15      30.     Defendant uses at least two of the seven most widely used synthetic food dyes—

16  Blue 1, Blue 2, Green 3, Red 3, Red 40, Yellow 5, and Yellow 6—which can cause or exacerbate

17  neurobehavioral problems in some children.[13] This can lead to behavioral problems such as

18  hyperactivity, inattentiveness and restlessness in some children.[14]

19      31.     Specifically, Defendant uses FD&C #40, or red dye 40, which is one of the most

20  widely used food dyes, as well as one of the most controversial. The dye is thought to be linked to

21

22  [10] *Id.*

23  [11] Keith Wilcox, Sandra Laporte, and Gabriel Ward, *Why Consumers Value Traditionally Made*
24  *Products*, https://spsp.org/news/character-and-context-blog/wilcox-laporte-ward-consumers-value-
    traditionally-made-products (last visited, May 20, 2025).

25  [12] *Id.*

26  [13] *Synthetic food dyes: Health risks, history, and policy*, Center for Science in the Public Interest,
27  https://www.cspinet.org/page/synthetic-food-dyes-health-risks-history-and-policy     (last   visited,
    May 20, 2025).

28  [14] *Id.*

allergies, migraines, and mental disorders in children.[15] Some studies have linked artificial food dyes like red dye 40 to hyperactivity, including ADHD.[16] Studies have also shown an improvement in behavior and attention once the dyes were eliminated.[17]

32.    Defendant also uses FD&C #1, or blue 1 dye, which is a chemical made from petroleum and other substances. It is created by chemical synthesis, often by adding sulphonic or carboxyl groups to natural dye molecules.[18] It can be linked to issues such as neurotoxicity, hyperactivity in children, allergies, cancer, organ damage, fertility issues and genetic defects.[19]

33.    The reasonable belief that the Products are made using traditional methods and with high quality ingredients, and free from the Hidden Ingredients was a significant factor in Plaintiff and other class members' decisions to purchase the Products. Such ice cream is considered to be a premium product, and consumers value products that are free from the Hidden Ingredients. Thus, Defendant promises premium products, but provides consumers with a cheaper, less premium product filled with undesirable ingredients.

34.    These misrepresentations were to induce consumers to purchase the Products, because Handel's knew that consumers purchased the Products as a result of the Quality Representations, and would have abstained otherwise in order to prevent their own and their families' exposure to the Hidden Ingredients, both of which could lead to bodily injury. Despite its representations, Handel's actual practices exposed consumers to these Hidden Ingredients. Plaintiff thus complains of bodily injury or the potential for bodily injury as the result of Handel's wrongdoing.

---

[15] *Can Red Dye Cause Allergies or Behavior Problems?* https://www.verywellhealth.com/red-and-yellow-may-be-the-cause-3956894 (last visited, May 20, 2025).

[16] *Id*.

[17] *Id*.

[18] Erin Coleman RD, *Blue 1 Dye: Everything You Need to Know About this Food Coloring*, https://www.rupahealth.com/post/blue-1-dye-everything-you-need-to-know-about-this-food-coloring (last visited, May 20, 2025).

[19] *Id*.

35.     As the entity responsible for the development, labeling, manufacturing, advertising, distribution and sale of the Products, Defendant knew or should have known that the Products' Quality Representations are false and misleading.

36.     Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's false and misleading representations. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers and gain an unfair advantage in the market.

37.     Consumers are willing to pay more for the Products based on the belief that the Products are traditionally made with high quality ingredients, and therefore contain no synthetic ingredients, dyes or preservatives. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed.

38.     Therefore, Plaintiff and other consumers purchasing the Products have suffered an injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**California Class**

All residents of California who purchased the Products within the applicable statute of limitation ("California Class").

**California Consumer Subclass**

All residents of California who purchased the Products for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the California Class, the "Classes").

40.     Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any

entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

41.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

42.    Plaintiff is a member of all the Classes.

43.    **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records or through sales data obtained via third parties franchise locations. At a minimum, there likely are tens of thousands of Class members.

44.    **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

    a.  whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

    b.  whether reasonable consumers would rely upon the Quality Representations about the Products and reasonably believe the Products are made without the Hidden Ingredients;

    c.  whether Defendant knew or should have known its representations were false or misleading;

    d.  whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

    e.  whether certification of each Class is appropriate under Rule 23;

    f.  whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

CLASS ACTION COMPLAINT

g.  the amount and nature of the relief to be awarded to the Plaintiff and the Class, including whether Plaintiff and the Class are entitled to punitive damages.

45.   **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Classes relied on the representations made by the Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

46.   **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as her interests do not conflict with the interests of the members of the proposed Classes she seeks to represent, and she has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

47.   **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

48.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

49.   **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendant has acted or refused to act on grounds

generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendant will continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq.***
**(*For the California Consumer Subclass*)**

50.     Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*

52.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

53.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have…" By representing that its Products are traditionally made with high quality ingredients, using original recipes and other statements included in the Quality Representations, yet contain the Hidden Ingredients, Defendant has represented and continues to represent that the Products have characteristics that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

54.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By making the Quality Representations yet containing the Hidden Ingredients, Defendant has represented and continues to represent that the Products are of a particular standard

-16-

when they are not of that standard. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

55.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By advertising the Products using the Quality Representations, Defendant has advertised the Products with characteristics it intended not to provide to consumers. As such, Defendant has violated section 1770(a)(9) of the CLRA.

56.    At all relevant times, Defendant has known or reasonably should have known that the Products' Quality Representations are false and misleading, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the Quality Representations when purchasing the Products. Nonetheless, Defendant deceptively advertises the Products as such in order to deceive consumers into believing that the Products are free from the Hidden Ingredients, when they are not.

57.    Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

58.    Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products are not free from synthetic ingredients, dyes or preservatives.

59.    Under Cal. Civ. Code § 1782, on September 21, 2024, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendant, outlining that Defendant has violated the CLRA for the reasons described herein. The letter was delivered on October 3, 2024. Defendant responded to the letter, but as of yet, has not taken any action to rectify this misconduct. Because Defendant has failed to fully rectify the issues within 30 days after receipt of the notice and demand letter, Plaintiff timely filed this Class Action Complaint for a claim for damages under the CLRA.

60.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code § 17500, *et seq***
**(*For the California Class*)**

61.     Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

63.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

64.     Defendant has represented and continues to represent to the public, including Plaintiff and members of the proposed California Class, through its deceptive advertising using the Quality Representations, that the Products are traditionally made using high quality ingredients and free from the Hidden Ingredients. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

65.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendant to restore this fraudulently obtained money to them and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in

-18-

1  the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class

2  may be irreparably harmed and/or denied an effective and complete remedy.

3  **THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**

4  **California Business & Professions Code § 17200, *et seq.***
**(*For the California Class*)**

5

6  66.    Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set

7  forth herein.

8  67.    Plaintiff brings this claim individually and on behalf of the members of the

9  proposed California Class against Defendant pursuant to California Business & Professions Code

10  § 17200 ("UCL").

11  68.    The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair

12  competition shall mean and include unlawful, unfair or fraudulent business practices and unfair,

13  deceptive, untrue or misleading advertising . . . ."

14  69.    Under the UCL, a business act or practice is "unlawful" if it violates any

15  established state or federal law. Defendant's false and misleading advertising of the Products was

16  and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws

17  as described herein. As a result of Defendant's unlawful business acts and practices, Defendant

18  has unlawfully obtained money from Plaintiff and members of the proposed California Class.

19  70.    Under the UCL, a business act or practice is "unfair" if its conduct is substantially

20  injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and

21  unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity

22  of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to

23  purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who

24  rely on the Products' advertising. Deceiving consumers into believing they will receive Products

25  traditionally made using high quality ingredients and free from the Hidden Ingredients, but failing

26  to provide the Products as advertised, is of no benefit to consumers. Therefore, Defendant's

27  conduct was and continues to be "unfair." As a result of Defendant's unfair business acts and

28

practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the proposed California Class.

71.    Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because, due to the Quality Representations, the Products have the effect of deceiving consumers into believing they will receive products that are free from the Hidden Ingredients. Because Defendant misled Plaintiff and members of the California Class, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of the California Class.

72.    Plaintiff requests that the Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to them, and members of the proposed California Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(*For the California Class*)**

73.    Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set forth herein.

74.    Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of express warranty under Cal. Com. Code § 2313.

75.    California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code §

-20-

2313.

76.     Plaintiff and members of the Class formed a contract with Defendant at the time they purchased the Products. As part of those contracts, Defendant made the Quality Representations and thus the Products are free from the Hidden Ingredients.

77.      The Products' Quality Representations are: (a) an affirmation of fact or promise made by Defendant to consumers that the Products are made in a specific manner; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representations; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the Quality Representations are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product descriptions.

78.     Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

79.     Defendant has breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Products in accordance with the Quality Representations.

80.     Plaintiff and members of the California Class paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the California Class had known of the true nature of the Products, they would not have been willing to pay the premium price associated with them. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2313**
***(For the California Class)***

81.     Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set forth herein.

82.    Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendant for breach of implied warranty under Cal. Com. Code §2314.

83.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

84.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

85.    Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

86.    By advertising the Products using the Quality Representations, Defendant made an implied promise that the Products are traditionally made using high quality ingredients and therefore free from synthetic ingredients, dyes or preservatives. The Products, however, have not conformed to these promises because the Products are not free from synthetic ingredients, dyes or preservatives. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable. Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

87.    If Plaintiff and members of the California Class had known that the Products' Quality Representations were false and misleading, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

**SIXTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
***(for the Classes)***

88.    Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set forth herein.

89.    Plaintiff brings this claim individually and on behalf of the members of the

-22-

proposed California Class against Defendant for unjust enrichment.

90.    As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the California Class to induce them to purchase the Products. Plaintiff and members of the California Class have reasonably relied on the misleading representations and have not received all of the benefits (i.e., that the Products are free from the Hidden Ingredients) promised by Defendant through the Products' Quality Representations. Plaintiff and members of the proposed California Class have therefore been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

91.    Plaintiff and members of the proposed California Class have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the proposed California Class.

92.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed California Class—i.e., Plaintiff and members of the proposed California Class did not receive the full value of the benefit conferred upon Defendant. Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them.

93.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the proposed California Class are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**Common Law Fraud**
***(for the Classes)***

94.    Plaintiff repeats the allegations contained in paragraphs 1-49 above as if fully set forth herein.

95.    Plaintiff brings this claim individually and on behalf of the members of the Classes for common law fraud.

-23-

96.     Defendant has willfully, falsely, and knowingly misrepresented the Products through the Products' Quality Representations, as it knew that the Products contained the Hidden Ingredients.

97.     Defendant has therefore made knowing, fraudulent misrepresentations as to the Products.

98.     Defendant's misrepresentations were material (i.e., they affected Plaintiff and members of the Classes' purchasing decisions given their importance) and are central to the Products' functionality and desirability.

99.     Defendant knew or recklessly disregarded the fact that the Products' Quality Representations were false and deceptive.

100.    Defendant intended that Plaintiff and members of the Classes rely on the Products' advertising, as if they had known the truth that the Products' Quality Representations were false and misleading, they would have paid less for the Products or would not have purchased them at all.

101.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, and if Plaintiff and members of the Classes had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

102.    For these reasons, Plaintiff and members of the Classes have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

//

//

//

-24-

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for following relief:

A.     Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of her counsel as Class counsel;

B.     A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D.     An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.     An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.     An award of nominal, punitive, and statutory damages;

H.     An award to Plaintiff and her counsel of reasonable expenses and attorneys' fees;

I.     An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

J.     For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: May 21, 2025

**ABIRI LAW, PC**

By: ___/s/ Robert Abiri_____

Robert Abiri
rabiri@abirilaw.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
t. 949.459.2133
f. 949.534.4367

*Attorneys for Plaintiff and the
Putative Classes*

-26-

CLASS ACTION COMPLAINT